

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Peter J. Martinez*
*Assistant United States Attorney*

8/2/14

*36 South Charles Street*       *DIRECT: 410-209-4984*
*Fourth Floor*                   *MAIN: 410- 209-4800*
*Baltimore, Maryland*            *FAX: 410-962-3124*
*21201*                          *TTY/TDD: 410-962-1462*
                                 *Peter.Martinez@usdoj.gov*

February 28, 2013

FILED ____ ENTERED
____ LODGED ____ RECEIVED

MAY 0 1 2014

Marc G. Hall, Esq.
Hall & Cho
200-A Monroe Street, Suite 310
Rockville, MD 20850

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Re:   *United States v. Jorge Alan Herevia,* Crim. No. 13-0639-RDB

Dear Mr. Hall:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 10, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.     The Defendant agrees to plead guilty to Count One of the pending indictment, in which he is charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.     The elements of Count One, to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a.  that from in our about May 2013 up through and including November 12, 2013, two or more persons agreed to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance;

b.  that the Defendant was a party to, or a member of, that agreement;

c.  that the Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with intent to distribute cocaine and intending to join together with at least one other alleged conspirator to achieve those objectives; and

d.  that the conspiracy occurred, at least in part, in the District of Maryland.

## Penalties

3.      The maximum sentence provided by statute for the count of conviction is as follows: life imprisonment, a $10 million fine, and a term of supervised release of at least five years. **There is also a mandatory minimum of 10 years imprisonment.**

4.      In addition, the Defendant must pay $100 as a special assessment, pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

5.      The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

6.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified; they would also have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that the presumption could be overcome only by proof beyond a reasonable doubt.

c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.  The Defendant would have the right to testify in his own defense, and he would also have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that it could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges against him.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statements.

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney and the Court, can predict with certainty the effect of a conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

7.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing

Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

8.      This Office and the Defendant understand, agree and stipulate to the following statement of facts, which this Office would prove beyond a reasonable doubt:

> An investigation by the Drug Enforcement Administration has established that from in or about May 2013 up to and including November 12, 2013, the Defendant, Jorge Alan Herevia, conspired with Bruce Dwayne Winston, Joe Howard Payne, and others to distribute and possess with intent to distribute more than five kilograms of cocaine in the District of Maryland.

> In early 2013, the DEA initiated a multi-state investigation of a cocaine trafficking conspiracy based in Texas. During the course of that investigation, the DEA developed information that the Defendant and others were distributing multi-kilogram shipments of cocaine to customers in the Mid-Atlantic region. On May 31, 2013, the DEA learned that the Defendant was staying at a Holiday Inn in Baltimore's Inner Harbor. Law enforcement subsequently established surveillance in and around in the Holiday Inn.

> Two days later, on June 2, 2013, officers conducting surveillance observed two white males, whom they later identified as Winston and Payne, checking into the Holiday Inn. An officer observed Winston and Payne meeting with the Defendant later that day. Officers subsequently observed a white GMC truck, bearing Arkansas registration 588OCX, in the parking lot outside the hotel. The truck was registered to Winston and his wife.

> On June 3, 2013, officers observed the Defendant leaving the Holiday Inn in the white GMC truck. The officers followed the Defendant to a Wal-Mart store in Randallstown, MD. At the Wal-Mart, an officer observed the Defendant leaving the store carrying what appeared to be a heat sealer. Pursuant to an administrative subpoena, investigators later determined that while inside the Wal-Mart, the Defendant did in fact purchase a heat sealer and several rolls of plastic wrap. After purchasing these items, the Defendant left the Wal-Mart, returned to the Holiday Inn, and parked the white GMC truck in the parking lot outside the hotel.

Approximately 15 minutes later, officers observed Winston and Payne leaving the Holiday Inn, carrying the same bags that they brought with them when they checked into the hotel. Winston and Payne got into the White GMC truck and exited the parking lot. Officers followed Winston and Payne out of Baltimore, onto I-695 North, and eventually onto I-70 West. As Winston and Payne merged onto I-70 West, an officer contacted the Maryland State Police and advised them of Winston and Payne's whereabouts. He also identified the White GMC truck in which Winston and Payne were traveling.

At 11:47 a.m., the white GMC truck passed a Maryland State trooper who was stationed in his vehicle on a service road in the median of the highway. The trooper noted that the truck slowed significantly as it passed by his location. The trooper subsequently exited the median and followed the truck as it continued along the highway. The trooper observed the truck changing lanes abruptly, without activating its turn signal, and pulling just in front of a vehicle in the neighboring lane. The trooper then initiated a lawful traffic stop of Winston and Payne.

During the course of the traffic stop, the trooper noted that Winston's hands were visibly shaking, and that Winston and Payne gave conflicting statements about where they had started their trip. On the basis of these and other observations, as well as on the prior notification that MSP received regarding Winston and Payne, the trooper requested a K-9 scan of the white GMC truck. The scan alerted positive for the presence of narcotics. Law enforcement officers subsequently searched the white GMC truck, and they discovered approximately 18 kilograms of cocaine hidden inside a secret compartment. They officers seized the cocaine, as well as approximately $30,000 in U.S. currency.

The Defendant admits that he conspired with Winston and Payne to distribute and possess with intent to distribute the quantity of cocaine that was seized by law enforcement officers during the traffic stop described above.

9.  This Office and the Defendant understand, agree and stipulate to the following applicable sentencing guidelines factors. The parties agree and stipulate that, based on the quantity of cocaine involved in the charged conspiracy and foreseeable to the Defendant, the Defendant's base offense level is 34. The parties further agree and stipulate that if the Court determines that the Defendant's criminal history category is I, and if the Defendant meets the criteria set forth in U.S.S.G. § 5C1.2(a)(1)-(5), the Defendant's adjusted offense level should be decreased by two levels pursuant to U.S.S.G. § 2D1.1(b)(16).

10.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Therefore, this Office and the Defendant agree that the adjusted offense level is **29**.

11.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

## Obligations of the United States Attorney's Office

12.    At the time of sentencing, this Office will recommend a sentence within the applicable advisory guidelines range. This Office will also move to dismiss any open counts against the Defendant.

13.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court shall be entitled to consider, all relevant information concerning the factors listed in 18 U.S.C. § 3553. If the Defendant has reserved the right to argue for any factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer, and government counsel at least ten days in advance of sentencing of the facts or issues he intends to raise.

## Effect of Proposed U.S.S.G. Changes as of March 13, 2014

14.    In anticipation of the forthcoming changes to the Drug Quantity Table in the United States Sentencing Guidelines, the United States hereby agrees not to oppose a two-level variance from the adjusted offense level set forth above. In exchange, the Defendant agrees not to seek a sentence reduction under 18 U.S.C. § 3582(c) if the proposed changes become effective.

## Waiver of Appeal

15.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the longest term of imprisonment within the advisory guideline range applicable to the Defendant; and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below the shortest term of imprisonment within the advisory guideline range applicable to the Defendant.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that results from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

16.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17.   The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office

nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and that the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea; rather, he will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Peter J. Martinez
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and I have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5/1/2014
Date

Jorge Alan Herevia


I am Mr. Herevia's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

5-1-14
Date

Marc Hall, Esq.